UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FILED IN OPEN COURT
2.5.2026

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA
JEP

UNITED STATES OF AMERICA

v.

JOHN LUCIDI

Case No. 3:24-cr-253(S1)-~~MMH~~-SJH
18 U.S.C. § 1343
18 U.S.C. § 1028A
26 U.S.C. § 7206(1)

## SUPERSEDING INFORMATION

The United States Attorney Charges:

### COUNT ONE
(Wire Fraud)

A. Introduction

At all times material to this Information:

1. The Defendant, John LUCIDI, is a resident of St. Johns County, in the Middle District of Florida.

2. LUCIDI and T.N. began doing business as Corporation 1 in or about March 2019. Corporation 1 was a construction company with its principal place of business located in Jacksonville, Florida. Corporation 1 primarily focused on the home improvements, specifically offering services for home windows, doors, as well as painting services.

3. Corporation 1 was owned by LUCIDI, T.N. and L.K. LUCIDI owned forty-five percent of Corporation 1, T.N. owned forty-five percent of Corporation 1, and L.K owned ten percent of Corporation 1.

4. LUCIDI's role at Corporation 1 was focused on marketing and sales. In May 2019, LUCIDI was added to Corporation 1's VyStar Credit Union bank account ending in account number 7613 as a beneficial owner with account control.

5. Vystar Credit Union was a financial institution headquartered in Jacksonville, Florida that provided individuals and businesses with banking and investment services.

6. American Express was a financial services company headquartered in New York, New York that was a bank holding company and multinational financial services corporation that specialized in payment cards.

7. Square Inc. was a company headquartered in California that offered financial services to consumers and businesses. LUCIDI had an account with Square Inc. ending in account number 0N49.

### B. The Scheme to Defraud

8. From in or about December 2018, through in or about June 2022, in the Middle District of Florida, the defendant,

### JOHN LUCIDI,

did knowingly devise and intend to devise, and participate in, a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as more fully described herein.

### C. Manner and Means

9. It was part of the scheme that LUCIDI would, and did, withdraw money from Corporation 1's VyStar account and transfer the money to LUCIDI's

Square account.

10. It was part of the scheme that the LUCIDI would, and did, acquire two American Express credit cards for Corporation 1 ending in account number 1008 and account number 1024 by using the personal identity information from T.N. without T.N.'s authorization.

11. It was part of the scheme that the LUCIDI would, and did, withdraw money from Corporation 1's American Express account ending in 1008 and transfer the money to LUCIDI's Square account.

12. It was further part of the scheme that LUCIDI would create descriptions of withdrawals to appear on Corporation 1's VyStar's statements as if the withdrawals were actually legitimate payments to vendors for goods and services, when, in fact, no such goods and services were provided to Corporation 1.

13. It was further part of the scheme that LUCIDI would create descriptions of withdrawals to appear on Corporation 1's American Express statements as if the withdrawals were actually legitimate payments to vendors for goods and services, when, in fact, no such goods and services were provided to Corporation 1.

14. It was further part of the scheme that once LUCIDI withdrew funds from Corporation 1's VyStar account and transferred funds to LUCIDI's Square account ending in account number 0N49, LUCIDI would then transfer the stolen funds to other bank accounts under LUCIDI's control where he would use the funds for his personal benefit.

15. It was further part of the scheme that once LUCIDI withdrew funds from Corporation 1's American Express account and transferred funds to LUCIDI's Square account ending in account number 0N49, LUCIDI would then transfer the stolen funds to other bank accounts under LUCIDI's control where he would use the funds for his personal benefit.

16. It was further part of the scheme that LUCIDI conducted over one hundred transactions where LUCIDI fraudulently withdrew funds from Corporation 1's Vystar and American Express accounts totaling approximately $659,393 that were transferred to LUCIDI's Square account.

17. It was further part of the scheme that LUCIDI would, and did, perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the scheme and the acts committed in furtherance thereof.

D. Execution of the Scheme

18. On or about the date set forth below, in the Middle District of Florida, and elsewhere, the defendant,

JOHN LUCIDI,

for the purpose of executing and attempting to execute the scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly and with intent to defraud, transmit, and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals, and sounds, that is, the below-listed transmission:

| COUNT | DATE | AMOUNT | SENT FROM | SENT TO |
|---|---|---|---|---|
| ONE | March 4, 2020 | $8,123 | American Express account in Jacksonville, Florida ending in account number 1008 | Square Account in San Jose, California, ending in account number 0N49 |

All in violation of 18 U.S.C. § 1343.

## COUNT TWO
### (Aggravated identity theft)

1. On or about March 4, 2020, in the Middle District of Florida and elsewhere, the defendant,

JOHN LUCIDI,

did knowingly transfer, possess, and use without lawful authority, a means of identification of another person, during and in relation to the felony offense of wire fraud, in violation of 18 U.S.C. § 1343, knowing that such means of identification belonged to an actual person, specifically T.N.'s social security number,

In violation of 18 U.S.C. § 1028A(a)(1).

## COUNT THREE
## (Making a False Tax Return)

1.  The Internal Revenue Service ("IRS") was an agency of the United States Department of the Treasury with responsibility for the ascertainment, computation, assessment, and collection of revenue, including individual income taxes.

2.  A Form 1040, U.S. Individual Income Tax Return, is an IRS form that is used to report an individual's income, exemptions, deductions, credits, taxes, taxes paid, and other financial information and to determine the amount of taxes owed by the individual to the IRS or the refund due to the individual from the IRS.

3.  "Federal income tax withheld" is money that is deducted from income payments by the payer of the income and deposited with the IRS to cover the tax that is expected to be assessed on the income for the tax year in which the income is paid. Withholding reduces the amount of tax an individual must pay, or results in a refund if more tax is withheld than is due, when the individual files the individual's annual tax return.

4.  On or about April 18, 2022, in Saint Johns County, in the Middle District of Florida, the defendant,

JOHN LUCIDI,

who was a resident of St. Augustine, Florida, did willfully make and subscribe a 2021 Form 1040, U.S. Individual Income Tax Return, filed with the Internal Revenue Service, which contained a written declaration that it was made under

penalties of perjury and which the defendant did not believe to be true and correct as to every material matter, in that the defendant stated in the Tax Return that the refund due was $1,441 when, as the defendant then and there knew, he actually would have owed tax in the amount of approximately $102,591.

In violation of 26 U.S.C. § 7206(1).

## FORFEITURE

1. The allegations contained in Counts One of this Information are incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3. The property to be forfeited includes, but is not limited to, the approximately $659,393 the defendant obtained as a result of the wire fraud scheme charged in the Superseding Information.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

           GREGORY W. KEHOE
           United States Attorney

By: _____
   John Cannizzaro
   Assistant United States Attorney

By: _____
   Frank Talbot
   Assistant United States Attorney
   Chief, Jacksonville Division