FILED IN OPEN COURT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2.5.2026

CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

JEP

v.                                                    Case No.3:24-cr-253(S1)-~~MMH~~-SJH

JOHN LUCIDI

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, JOHN LUCIDI, and the defendant's attorney, John Rockwell, mutually agree as follows:

A.    **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Count One, Two, and Three of the Superseding Information. Count One charges the defendant with wire fraud, in violation of 18 U.S.C. § 1343. Count Two charges the defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Count Three charges the defendant with making a false tax return, in violation of 26 § U.S.C. 7206(1). ~~2461(e)~~. gc JR

2.    Maximum Penalties

The maximum penalties for Count One, wire fraud, are a term of imprisonment of not more than twenty years, a fine of not more than $250,000 or twice the gross gain or twice the gross loss arising from the offense, whichever is

Defendant's Initials _____                    AF Approval   _JAM_

greater, or both a term of imprisonment and a fine, a term of supervised release of

not more than three years, and a special assessment of $100. A violation of the terms

and conditions of supervised release is punishable by a maximum sentence of not

more than two years of additional imprisonment, as well as the possibility of an

additional term of supervised release.

The maximum penalties for Count Two, aggravated identity theft, are a

mandatory minimum term of imprisonment of 2 years that must run consecutive to *JR* *JC*

any other term of imprisonment, a fine of *Not more than* $250,000, *JR* *or twice the gross gain or twice the gross loss* a term of supervised release not *arising from the offense,*

more than 1 year, and a special assessment of $100. A violation of the terms and *whichever is greater,*

conditions of supervised release is punishable by a maximum sentence of not more

than one year of additional imprisonment as well as the possibility of an additional

term of supervised release.

The maximum penalties for Count Three, making a false tax return, are

a term of imprisonment of not more than three years, a fine of not more than

$250,000, or twice the gross gain or twice the gross loss arising from the offense,

whichever is greater, or both a term of imprisonment and a fine, a term of supervised

release of not more than one year, and a special assessment of $100, which is due on

*together with the cost of prosecution,* *JC* *JR*

the date of sentencing. A violation of the terms and conditions of supervised release

is punishable by a maximum sentence of not more than one year of additional

imprisonment, as well as the possibility of an additional term of supervised release.

The cumulative maximum penalties for Count One, Count Two, and

Count Three are a minimum mandatory term of imprisonment of two years plus up

Defendant's Initials                     2

*for each count, JP*

to twenty-three years, a fine of not more than $250,000, or twice the gross gain or

*for each count, JP*

twice the gross loss arising from the offense, whichever is greater, or both a term of

imprisonment and a fine, a term of supervised release of not more than three years,

*plus the cost of prosecution as to Count 3, AC  JR*

and a special assessment of $300, which is due on the date of sentencing. A violation

of the terms and conditions of supervised release is punishable of not more than four

years of additional imprisonment, as well as the possibility of an additional term of

supervised release.

With respect to certain offenses, the Court shall order the defendant to

make restitution to any victim of the offense(s), and with respect to other offenses,

the Court may order the defendant to make restitution to any victim of the offense(s),

or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of

the offenses to which the defendant is pleading guilty.  The elements of Count One,

wire fraud, are:

| First: | The defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises; |
|---|---|
| Second: | The false pretenses, representations, or promises were about a material fact; |
| Third: | The defendant acted with the intent to defraud; and |
| Fourth: | The defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme. |

Defendant's Initials _____                3

The elements of Count Two, aggravated identity theft, are:

> First:  The defendant knowingly transferred, possessed, or used another person's means of identification or identification document;

> Second:  The defendant did so without lawful authority; and,

> Third:  The defendant did so during and in relation to wire fraud, a qualifying predicate offense.

The elements of Count Three, making a false tax return, are:

> First:  The defendant made or caused to be made a return for the 2021 tax year;

> Second:  The return contained a written declaration that it was made under the penalty of perjury;

> Third:  When the defendant made or helped to make the return, he knew it contained false material information;

> Fourth:  When the defendant did so, he intended to do something he knew violated the law; and

> Fifth:  The false matter in the return related to a material statement.

4.  <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

5.  <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States

Defendant's Initials           4

Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Acceptance of Responsibility

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.4., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____   5

7.    Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to the victim of the offenses charged in the indictment. Specifically, the defendant agrees to make restitution in the amount of $659,393 to Victim T.N.

8.    Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 981(a)(1)(C), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $659,393 in proceeds the defendant admits he obtained as the result of the commission of the wire fraud scheme charged in Count One to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offense(s), and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained, as the result of the offense(s) of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offense(s) and consents to the entry of the forfeiture order

Defendant's Initials _____                6

into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the

Defendant's Initials _____                    7

forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of

Defendant's Initials _____                    8

any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

B.    **Standard Terms and Conditions**

      1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts,

Defendant's Initials _____    9

and whether or not such counts are dismissed pursuant to this agreement. The

defendant further understands that compliance with any restitution payment plan

imposed by the Court in no way precludes the United States from simultaneously

pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the Mandatory

Victims Restitution Act, in order to ensure that the defendant's restitution obligation

is satisfied.

On each count to which a plea of guilty is entered, the Court shall

impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this

obligation is satisfied, the Defendant agrees to deliver a check or money order to the

Clerk of the Court in the amount of ~~$100~~ 300 ᵈᶜ JR, payable to "Clerk, U.S. District Court"

due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as

to fine.

    2.    <u>Supervised Release</u>

The defendant understands that the offense to which the defendant is

pleading provides for imposition of a term of supervised release upon release from

imprisonment, and that, if the defendant should violate the conditions of release, the

defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other

Defendant's Initials _____        11

third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.  The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or

Defendant's Initials _____          12

defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials                  13

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right

Defendant's Initials     14

to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

>    11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

>    12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

Defendant's Initials         15

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

      13.   <u>Certification</u>

      The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___ day of ~~November, 2025,~~ January, 2026, JR

 

 

                                          GREGORY W. KEHOE
                                          United States Attorney

| | |
|---|---|
| _____ | _____ |
| JOHN LUCIDI | JOHN CANNIZZARO |
| Defendant | Assistant United States Attorney |
| | |
| _____ | _____ |
| JOHN ROCKWELL | FRANK TALBOT |
| Attorney for Defendant | Assistant United States Attorney |
| | Chief, Jacksonville Division |

Defendant's Initials _____      16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                Case No. 3:24-cr-253(S1)-~~MMH~~-SJH *JEP*

JOHN LUCIDI

## PERSONALIZATION OF ELEMENTS

**As to Count One:**

1.    Did you knowingly devise or participate in a scheme to defraud, or to
obtain money or property from Victim T.N. by using false pretenses, representations,
or promises as alleged in the ~~Indictment?~~ *Superseding information ?* *or*

2.    Were the false pretenses, representations, or promises about a material
fact?

3.    Did you act with the intent to defraud?

4.    On or about March 4, 2020, did you transmit or cause to be transmitted
a wire communication in interstate commerce by directing a transfer of $8,123 from
American Express Account ending in account number 1008 to your Square Account
ending in account number 0N49 in order to help carry out the scheme?

Defendant's Initials

**As to Count Two:**

1.    On or about March 4, 2020, in the Middle District of Florida, did you knowingly transfer, possess, or use another person's means of identification or identification document, specifically the social security number of victim T.N., as listed in the ~~indictment~~? *or Superseding information?* JR

2.    Did you do so without lawful authority?

3.    Did you do so during, and in relation to, wire fraud, specifically in using this information in the commission of the offense described in Court One of the Superseding Information, which included withdrawing funds from the corporate account to your own personal account?

Defendant's Initials                 2

**As to Count Three:**

1.    Do you admit that on or about April 18, 2022, you made and caused to be made an individual income tax return for the year 2021?

2.    Do you admit that the return contained your written declaration that it was made under the penalty of perjury?

3.    Do you admit that when you made and helped to make the return, you knew that it contained false material information, specifically, it falsely excluded at least $356,425 in income that you received in the form of business income in 2021?

4.    Do you admit that when you did so, you intended to do something you knew violated the law?

5.    Do you admit that the false matter in the return related to a material statement, specifically, the amount of your income for 2021?



UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                  Case No. 3:24-cr-253(S1)-~~MMH~~-SJH
                                                             *JEP*

JOHN LUCIDI

FACTUAL BASIS

**As to Count One and Count Two**:

In January 2018, the defendant, John LUCIDI, met victim T.N. at a
construction company in the Middle District of Florida. After working together for
about a year, they both decided to purchase a company, Corporation 1 listed in the
Superseding Information. LUCIDI's role at Corporation 1 was focused on marketing
and sales.  In May 2019, LUCIDI was added to Corporation 1's VyStar Credit
Union bank account ending in account number 7613 as a beneficial owner with
account control.

Around September 2022, T.N. became suspicious of some cash withdrawals of
the business bank account. When confronted, LUCIDI told T.N. the cash
withdrawals were used to pay a search engine optimization company called "Google
SEO" which was charging around 25,000 dollars a month.

T.N. then reached out to Corporation 1's website director.  The website
director's services included establishing the company website design, maintaining it
and providing search engine optimization (SEO). Corporation 1 paid the website

Defendant's Initials _____

director between $1,150 to $2,000 per month for full web services, including SEO. The website director was the only individual with administrative access with sole control over the functionality to provide these services. The website director further told T.N. that the information LUCIDI gave to T.N. about the fees for SEO were outrageous and also it would be incredibly unlikely that a company would be actually called Google SEO. LUCIDI was removed from the company at the time of this discovery, and then a forensic accountant was hired to examine Corporation 1's finances. The findings of the forensic accountant were then brought to the attention of the FBI that then conducted their own financial review.

A review of those bank records by an FBI Forensic accountant confirmed GOOGLE SEO as a debit payee. LUCIDI was able to conduct this SEO scheme through the use of the Square credit card processing application. LUCIDI used his established Square account, defined a fake business as GOOGLE SEO, and began charging Corporation 1's debit card tied to the VyStar account. As such, the weekly charges on the bank statements created an illusion that Corporation 1 was paying a vendor identified as GOOGLE SEO. Funds received into the Square account controlled by LUCIDI was later transferred to personal and business accounts controlled by LUCIDI. LUCIDI also used the Square application to name himself "American Express" and stole an additional approximately $150,060 from Corporation 1 all while using the application to create the illusion that the company was paying American Express the same way he used Google SEO. LUCIDI made over 100 transactions through this false vendor scheme and he stole approximately

Defendant's Initials _____    2

$659,393.

Specifically, as to Count 1, on March 20, 2020, LUCIDI billed Corporation 1's American Express card ending in account number 1008 for "MATERIALS AND MARKETING" in the amount of $8,123.60. This was actually money that was put on LUCIDI's square account ending in account number 0N49. The money was never used for Corporation 1 but instead directly went to LUCIDI for his own personal use.

Specifically, as to Count 2, LUCIDI used T.N.'s social security card in order to establish a credit card. This credit card, American Express account ending in 1008 was set up without the authorization of T.N. and this particular card was used in LUCIDI's wire fraud scheme as described above.

**As to Count Three**:

The Internal Revenue Service ("IRS") is an agency of the Unites States Department of Treasury responsible for the assessment, ascertainment, computation, and collection of federal income taxes, including individual income taxes. United States citizens and others who made a certain amount of income had an obligation to prepare and file federal income tax returns disclosing, among other information, the filer's true income. Individual taxpayers used an IRS Form 1040, "U.S. Individual Income Tax Return" (Form 1040) to report their individual federal tax information.

Relevant to this Superseding Information, during the 2021 tax year, JOHN LUCIDI co-owned and operated a residential home window sales and installation business (Corporation 1), along with Person 1 and Person 2 in Jacksonville, FL, in

Defendant's Initials                     3

the Middle District of Florida. LUCIDI controlled all financial aspects of Corporation 1, including bank accounts, employee payroll, and the company's books and records.

As a part of his co-ownership of Corporation 1, LUCIDI and co-owners opened bank accounts in the name of Corporation 1 at a bank within the Middle District of Florida. At all times relevant to the information, LUCIDI was a signor and maintained a controlling interest in Corporation 1's accounts. Corporation 1 bank accounts were used to specifically fund operations of Corporation 1. LUCIDI also used Corporation 1 bank accounts to fund his lifestyle through direct and indirect manners.

LUCIDI had previously opened a personal account at a bank with locations in the Middle District of Florida, Account 1. This account was jointly owned by Person 3. Account 1 was the recipient of the majority of LUCIDI's fraudulent activities in tax year 2021. In tax year 2021 a total of $372,102 was deposited into Account 1, of which at least $244,203 were obtained fraudulently from Corporation 1.

Unrelated to the operation of Corporation 1, LUCIDI opened another business-related financial account, Account 2, using the identifiers of Person 3 at a financial services company that provides credit card payment processing for small businesses, which is located outside of the Middle District of Florida. Accounts offered by the financial services company provide the account owner the ability to hold funds received through credit card transactions in escrow for an indefinite amount of time.

Defendant's Initials _____     4

The account owner is also able to transfer funds held in escrow to financial accounts of their choosing.

LUCIDI used Account 2 as a conduit to facilitate a fraud scheme for LUCIDI's personal enrichment from Corporation 1 and to conceal the resulting income from the IRS. At all times relevant to the Information, LUCIDI maintained control of Account 2. At no point in the life of Account 2 did LUCIDI have the intent of using it for Corporation 1 or any other business purposes. Instead, LUCIDI used Account 2 to embezzle at least $295,884 from Corporation 1 during tax year 2021. Of that amount, at least $244,203 was transferred by LUCIDI into Account 1. Funds deposited into Account 1 were used to fund his home mortgage, personal vehicle, and boat payments, among other personal expenses.

During tax year 2021, LUCIDI received and deposited $244,203 in income into Account 1. He filed a Form 1040 for the 2021 tax year, on which he reported the legitimate wages he earned from Corporation 1, but he knowingly omitted income received from embezzlement activities conducted inside Account 2. He also omitted the income earned from his ownership in Corporation 1 reported to the IRS via Form 1120S and related Form K-1 filed for Corporation 1.

Defendant's Initials _____          5